**In re Janice Kay BEARDEN, Debtor.**

**Janice Kay BEARDEN, Plaintiff,**

v.

**UNITED STATES of America ex rel. INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. BK–95–10444–LN. Adversary No. ADV–95–1140–LN.**

United States Bankruptcy Court, W.D. Oklahoma.

June 30, 1997.

Partial Judgment July 8, 1997.

Order Amending Partial Judgment, Sept. 24, 1997.

Kenneth G.M. Mather, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, for Plaintiff.

Travis Brent Hull, Oklahoma City, OK, Joan Stentiford Ulmer, U.S. Department of Justice, Washington, DC, for Defendant.

### ORDER ON CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT

PAUL B. LINDSEY, Bankruptcy Judge.

### THE UNDISPUTED FACTS

On November 20, 1990, the District Court of Cleveland County, Oklahoma, entered a decree of divorce between Debtor and her former spouse, thereby dissolving their marriage, which had existed since April 12, 1984. *See* IRS Exhibit 1.

On February 3, 1993, delinquent joint federal individual income tax returns for the years 1984 and 1985 were filed with the Internal Revenue Service ("IRS") on behalf of Debtor and her former spouse. These returns reported outstanding tax liabilities for the years 1984 and 1985. *See* IRS Exhibits 2 & 3.

On November 14, 1994, at a time within 90 days prior to the commencement of the underlying bankruptcy case, IRS filed with the County Clerk of Cleveland County, Oklahoma, in which Debtor's homestead is located, a notice of federal tax lien based upon Debtor's unpaid tax obligations for 1984 and 1985. *See* IRS Exhibit 4.

On January 26, 1995, Debtor commenced the underlying case by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.[1] According to her schedules filed in the bankruptcy case, Debtor claimed her homestead property as exempt from the bankruptcy estate, and scheduled IRS as the holder of a claim secured by its tax lien.

On May 1, 1995, while the Chapter 7 case was pending and prior to the entry of an order of discharge, IRS offset Debtor's 1994 federal income tax refund, in the amount of $1,772.00, against her outstanding income tax liability for 1984. On May 2, 1995, Debtor was granted a discharge pursuant to § 727.

On July 7, 1995, after having determined that the automatic stay imposed under § 362(a)(7) was in effect at the time it exercised its right to offset,[2] IRS filed its motion requesting that it be granted relief from the automatic stay, retroactively, in order to permit the offset of Debtor's 1994 tax refund against Debtor's 1984 tax liability.[3]

In April, 1997, IRS offset Debtor's 1995 federal income tax refund, in the amount of $1,421, against her 1984 tax debt.

### THE AMENDED COMPLAINT

On June 2, 1995, Debtor commenced the instant adversary proceeding. In her complaint, as amended November 6, 1996, Debtor initially seeks an order of this Court authorizing her to amend her tax returns for 1994 and 1985, and determining her individual tax liability for those years pursuant to § 505(a).[4]

---

**1.** References herein to statutory provisions by section number only will be to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, unless the context requires otherwise.

**2.** Section 362(a) provides in pertinent part: Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of . . .

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor.

**3.** In its motion, IRS points out that no ruling has yet been made on its request. On July 21, 1995, Debtor filed an objection to IRS' motion for relief from stay. Rule 13(d) of the Local Rules of this court requires that if a request for relief from the automatic stay under 11 U.S.C. § 362(d) is opposed, the party opposing it must promptly request a hearing pursuant to 11 U.S.C. § 362(e). No such request was made.

**4.** Section 505(a) provides: (1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously as-

In a second cause of action, Debtor seeks to avoid, pursuant to § 552(h), the federal tax lien filed November 11, 1994, encumbering her homestead.[5]

Finally, in a third cause of action, Debtor alleges that IRS wrongfully violated the automatic stay when it exercised its offsets, and thus requests judgment for an award of actual and punitive damages for the wrongful taking of her tax refunds by IRS, and for an award of costs and reasonable attorney fees.[6]

On December 10, 1996, IRS filed an answer to Debtor's amended complaint, and on April 18, 1997, it filed its motion for partial summary judgment with respect to Debtor's second and third causes of action noted above.

On May 5, 1997, Debtor filed a response to the IRS motion, combined with her cross-motion for partial summary judgment.

## THE CONTENTIONS

In its motion for partial summary judgment, IRS argues that because § 522(c)(2)(B) prohibits the avoidance of properly filed tax liens on exempt property, Debtor may not avoid its tax lien on her homestead.[7]

With respect to the alleged violations of the automatic stay when it exercised its rights to offset, IRS concedes that at the time it exercised the May 1, 1995, offset, the automatic stay was in effect. It argues, however, that because Debtor has made no showing that she suffered any actual damage, its actions represent a "technical" violation, and the requirements of § 362(h) therefore have not been satisfied.

With respect to the offset exercised in April 1997, IRS asserts that the automatic stay imposed by § 362(a)(7) was extinguished on May 2, 1995, pursuant to § 362(c)(2)(C), by the entry of the order of discharge, and that therefore no violation of the automatic stay occurred.[8]

In her response and cross-motion for partial summary judgment, Debtor argues that contrary to the IRS contention, § 522(c)(2)(B) does not bar a debtor from using the authority granted under § 522(h) to avoid a preferential transfer (here, the IRS lien) under § 547 when all the requirements of § 522(h) have been met.[9] She therefore contends that, having met the requirements of § 522(h), the lien held by IRS on her homestead may be avoided.

sessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

5. Section 522(h) provides: The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

    (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
    (2) the trustee does not attempt to avoid such transfer.

6. Section 362(h) provides: An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

7. Section 522(c) provides in relevant part: Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if

such debt had arisen, before the commencement of the case, except . . .

    (2) a debt secured by a lien that is—
    (A)(I) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and
        (ii) not void under section 506(d) of this title; or
    (B) a tax lien, notice of which is properly filed.

8. Section 362(c) provides in part: (2) the stay of any other act under subsection (a) of this section continues until the earliest of—

    (A) the time the case is closed;
    (B) the time the case is dismissed; or
    (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

9. Under § 547(b), subject to certain exceptions, a transfer of an interest of the debtor in property may be avoided if it is: To or for the benefit of a creditor; for or on account of an antecedent debt owed by the debtor before the transfer was made; made while the debtor was insolvent; and made on or within 90 days before the date of the filing of the petition.

With respect to the offset by IRS on May 1, 1995, Debtor argues that, contrary to the IRS assertion, she suffered damages as a result, since she was deprived of the use of those funds.

With respect to the April, 1997 offset, Debtor concedes that IRS' actions were not a violation of the automatic stay imposed under § 362(a)(7), but argues that its acts represent a violation of the permanent injunction provided by § 524.[10]

## CONCLUSIONS OF LAW

Summary judgment under Rule 56, Fed. R.Civ.P., made applicable to this proceeding under Rule 7056, Fed.R.Bankr.P., is appropriate if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In this matter, there are no genuine issues of material fact, and thus disposition by summary judgment is appropriate.

### THE LIEN AVOIDANCE ISSUE

■ In her brief, Debtor cites *State of Connecticut v. Leach (In re Leach),* 15 B.R. 1005 (Bankr.D.Conn.1981) as authority for her contention that the provisions of § 522(c)(2) do not bar the avoidance of a lien under § 522(h). In *Leach,* the State of Connecticut objected to the debtor's claim of exemption in proceeds resulting from a personal injury claim, arguing that the proceeds would remain liable for the pre-petition debt owed Connecticut secured by its *statutory* lien. The debtor argued however that because the State's lien was not perfected or enforceable against a bona fide purchaser on the date his petition was filed, the State's lien was avoidable pursuant to §§ 545(2) and 522(h). The court, after having found that the requirements of § 522(h) had been met, and having concluded that the provisions of

§ 522(c)(1) and (c)(2)(A) were inapplicable, overruled the State's objection.

Debtor's reliance on the holding in *Leach* is misplaced with respect to the issues before this court in this case. In *Leach,* the lien at issue was a *statutory* lien avoidable under § 545(2), and thus under § 522(h). Because that lien was not a tax lien, the applicability of § 522(c)(2)(B) was not at issue and was therefore not addressed by the court in *Leach.*

As authority for its contention, IRS cites *DeMarah v. United States (In re DeMarah),* 62 F.3d 1248 (9th Cir.1995). In *DeMarah,* a Chapter 7 debtor sought, *inter alia,* to avoid a federal tax lien on his exempt property to the extent that the lien secured a claim for tax penalties. The Court of Appeals for the Ninth Circuit found that the debtor met all the requirements under § 522(h), and that the claim secured by such lien was of the kind subject to avoidance under § 724(a), one of the provisions specified in § 522(h). The court nevertheless held that § 522(c)(2)(B) precluded avoidance, in whole or in part, of properly filed federal tax liens on exempt property. *Id.* at 1251.

Debtor's attempt to distinguish *DeMarah* from the instant matter because the federal tax lien at issue herein is subject to avoidance under § 547, rather than under § 724(a), as in *DeMarah.* This distinction, however, is not in this court's view, sufficient to change the result. The issue which the court is called upon to address in this case at this time is whether § 522(c)(2)(B) precludes the avoidance under § 522(b) of a properly filed tax lien. That the lien may have been otherwise avoidable under any of the provisions specified in § 522(c)(2)(A)(i) is irrelevant to the determination of that issue.

In this case, the lien at issue is unquestionably a tax lien, and Debtor does not controvert that the lien has been properly filed. Under *DeMarah,* in these circumstances, § 522(c)(2)(B) is applicable even if the lien would otherwise be avoidable under § 522(h). Debtor offers no authority for the proposition

---

**10.** Section 524 provides in part: (a) A discharge in a case under this title ... (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

that § 522(c)(2)(B) is inapplicable to tax liens which would otherwise be avoidable under § 547, and therefore under § 522(h). Neither does the statutory language provide, or support, such a limitation on its applicability.

In a recent reported opinion, not cited by either party, the Bankruptcy Appellate Panel of the Tenth Circuit held that § 522(c)(2)(B) overrides the general exemption and avoidance powers granted in § 522(g) and (h). *See Straight v. First Interstate Bank of Commerce, et al. (In re Straight)*, 207 B.R. 217, 228 (10th Cir. BAP 1997). This court is of the view that the decisions in *DeMarah* and *Straight* are well reasoned, and this court therefore elects to follow them.

■ Moreover, this court has previously held that the Congress, in the clear and unequivocal language of § 522(c)(2)(B), intended to preserve the validity of a properly filed pre-petition tax liens against exempt property of a debtor. *Rouse v. United States of America (In re Rouse)*, 141 B.R. 218, 221 (Bankr.W.D.Okla.1992). This court reiterates its prior conclusion, follows *DeMarah* and *Straight,* and holds that § 522(c)(2)(B) prohibits the avoidance of a properly filed pre-petition tax lien on property claimed exempt by a debtor, even if the lien would otherwise be avoidable under § 522(h).

### VIOLATION OF THE AUTOMATIC STAY

*The May 1, 1995 Offset.*

■ As is contended by IRS, the language of § 362(h) requires a showing of actual damages before any award may be made under that provision. Although IRS concedes that it violated the automatic stay at the time it exercised the May 1 offset, it argues that Debtor suffered no actual damages as a result of its acts. In support of this argument, IRS points out that when it realized that the automatic stay was in effect at the time it exercised the May 1, 1995 offset, it immediately placed the funds in an administrative freeze status, which is permissible under *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).

In her brief, Debtor cites *United States v. Reynolds,* 764 F.2d 1004 (4th Cir.1985) and *United States v. Norton,* 717 F.2d 767 (3rd Cir.1983) as authority in support of her contention that IRS violated the automatic stay. However, these decisions pre-date, and were effectively overruled by the decision in *Strumpf,* in which the United States Supreme Court held that the placing of an administrative freeze on an account in order to preserve a right to offset pending a motion for relief from the automatic stay does not constitute a violation of such stay.

■ This court agrees with Debtor that the loss of use of funds may represent compensable damages under § 362(h). However, in this court's view, there must be a showing by Debtor that the acts of IRS in fact deprived her of possession and of the use of the withheld 1994 income tax refund.

Here, it is clear that Debtor's 1994 tax refund was properly subject to offset against her 1984 tax liability, and that placing those funds in an administrative freeze status during the pendency of a request for relief from the automatic stay did not constitute a violation of that stay.[11] In these circumstances, Debtor can not show that she was wrongfully denied access to her 1994 income tax refund, or that she has suffered any other injury. This court therefore concludes that the provisions of § 362(h) have not been satisfied with regard to the May 1, 1995 offset.

### THE PERMANENT INJUNCTION OF § 524

*The April 1997 Offset.*

■ In its brief, IRS argues that at the time it exercised the offset of Debtor's 1995 tax refund against her 1984 tax liability, the automatic stay imposed by § 362(a)(7) had been terminated under § 362(c)(2)(C), since

11. Section 553(a) provides in material part: Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

an order of discharge had been entered on May 2, 1995.

In her response, Debtor concedes that with respect to the April 1997 offset, the automatic stay provided under § 362(a)(7) had been terminated, but argues that the provisions of § 524 enjoined IRS from exercising such offset.[12]

Section 524(a)(2) provides that a discharge of a debt in a case under title 11 operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. *See* § 524(a)(2).

On May 2, 1995, upon the entry of the order of discharge, Debtor's personal liability for the 1984 and 1985 tax obligations, both pre-petition debts, was discharged.

In April 1997, at the time IRS exercised an offset of Debtor's post-petition 1995 federal income tax refund of $1,421 against Debtor's discharged pre-petition income tax obligation for 1984, the permanent injunction provided under § 524(a)(2) was in effect, and therefore IRS was enjoined from exercising such offset.[13]

### DECISION

Based upon the foregoing, summary judgment will be granted in favor of IRS to the extent that its pre-petition tax lien on Debtor's homestead may not be avoided under § 522(h). Summary judgment will also be granted in favor of IRS to the extent that the May 1, 1995 offset represents only a technical violation of the stay for which Debtor is not entitled to recover actual or punitive damages.

■ However, summary judgment will be entered in favor of Debtor and against IRS to the extent that IRS violated the permanent injunction provided by § 524(a) when IRS exercised the April, 1997 offset of Debt-

or's 1995 tax refund against Debtor's previously discharged 1984 tax obligation. IRS will be directed to turnover to Debtor the amount of her 1995 income tax refund, in the amount of $1,421, with accrued interest at the applicable overpayment rate established under 26 U.S.C. § 6621.

As is permitted by Rule 54(b) Fed.R.Civ. P., made applicable to this adversary proceeding under Rule 7054(a) Fed.R.Bankr.P., partial judgment on the issues raised by the instant motions will be entered accordingly.

An amended scheduling order will be entered setting for trial the remaining issues raised in Debtor's amended complaint with respect to her request for an order authorizing her to amend her tax returns for 1984 and 1985, and for a determination of her tax liability pursuant to § 505(a).

IT IS SO ORDERED.

### *PARTIAL JUDGMENT*

The court, having entered its Order on Cross–Motions for Partial Summary Judgment dated June 30, 1997,

IT IS ORDERED, ADJUDGED AND DECREED that Defendant have judgment against Plaintiff to the extent that Defendant's pre-petition tax lien on Plaintiff's homestead may not be avoided under § 522(h).

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant have judgment against Plaintiff to the extent that the May 1, 1995 offset represents only a technical violation of the stay for which Plaintiff is not entitled to recover actual or punitive damages.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff have judgment against Defendant directing Defendant to turnover to Plaintiff the amount of her 1995 income tax refund, in the

---

**12.** It is noted that the issue under § 524(a) was raised by Debtor for the first time in her response and cross-motion for partial summary judgment. It is also noted that IRS filed no response to Debtor's cross-motion.

**13.** It is further noted that at the time IRS exercised the April 1997 offset, the provisions of § 553 had not been met. Whether the permanent injunction provided under § 524 would have prevented such offset had § 553 been satisfied is not before this court, and this court does not decide that issue at this time.

amount of $1,421, with accrued interest at the applicable overpayment rate established under 26 U.S.C. § 6621.

### AMENDED PARTIAL JUDGMENT

The court, having entered its Order on Cross–Motions for Partial Summary Judgment dated June 30, 1997,

IT IS ORDERED, ADJUDGED AND DECREED that Defendant have judgment against Plaintiff to the extent that Defendant's pre-petition tax lien on Plaintiff's homestead may not be avoided under § 522(h).

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant have judgment against Plaintiff to the extent that the May 1, 1995, offset represents only a technical violation of the stay for which Plaintiff is not entitled to recover actual or punitive damages.

On July 25, 1997, Debtor filed her response. In that response, Debtor asserts that her amended complaint seeks a determination under 11 U.S.C. § 505(a) whether she has any unpaid tax obligations attributable to the 1984 and 1985 taxable years, as well as a determination regarding the dischargeability of such obligations. She points out that these issues remain to be determined at trial currently set for November 4, 1997.

In these circumstances, this court is of the view that the final adjudication of the remaining issues set for trial November 4, 1997, will be dispositive of the issue whether IRS should be allowed to retain such funds. Accordingly, IRS should be allowed to administratively hold such funds until such time as Debtor's tax liability for the subject years is ultimately determined.

Based upon the foregoing, the motion to amend judgment filed by IRS will be granted, and the judgment entered July 8, 1997, will be amended to vacate that provision requiring IRS to turnover to Debtor her 1995 tax refund pending this court's determination of all remaining issues.

IT IS SO ORDERED.